## CHARLESTON. .

ETHEL COOK *v*. J. E. COLEMAN *et als.*

Submitted April 4, 1922.        Decided April 11, 1922.

1. PARTNERSHIP—*Persons Permitting Themselves to be Held Out as Partners Held Liable as Such in Trespass on the Case.*

    In an action of trespass on the case for recovery of damages for breach or violation of a duty arising out of a contract alleged to have been made between the plaintiff and the defendants, the latter being sued as partners, the defendants, though not actual partners, may be held to liability as if they were, upon proof of their having held themselves out, or knowingly permitted themselves to be held out, as such, and knowledge of and reliance upon the representation, by the plaintiff, in the making of the contract. (p. 752).

2. SAME—*Evidence of Separate Admissions Held Admissible to Prove Partnership.*

    Evidence of separate admissions of the partnership relation by all of the parties sued as partners, taken together and considered as an entirety, is admissible in such case to prove that they were actual partners, at the time of the making of the contract. (p. 572).

3. SAME—*Bill-Head Used in Business Held Admissible as Evidence of Partnership Relation.*

    In connection with such evidence and proof of their close association in the business the defendants are alleged to have conducted, as partners, and within the scope of which the

contract giving rise to the duty was made, a bill-head used
in the business, bearing the names of the defendants, though
not describing them as partners, is admissible as evidence
of the partnership relation alleged.   (p. 752).

4.   SAME—*Evidence of Attendance on. Business, Association
     Therein, Presence in Locality Thereof, etc., Held Admissible
     to Fix Liability as Partners.*

     In connection with the evidence above referred to and proof
of frequent personal attendance upon the business, associa-
tion therein and presence in the locality in which it is con-
ducted, by the defendants, evidence of general reputation of
the existence of the partnership, known to the plaintiff and
relied upon by him, in the making of the contract, is admis-
sible to prove liability of the defendants, as partners, by rea-
son of their having held themselves out, or knowingly suffered
themselves to be held out, as such, even though they are not
actual partners.   (p. 752).

5.   . EVIDENCE—PHYSICIANS AND SURGEONS—*In Action Against Phy-
     sician's Operating Hospital for Damages for Negligence in
     Performing Surgical Operation, Evidence of Plaintiffs With-
     drawal After Injury Held Admissible.*

     In an action against physicians operating a hospital, for
·damages alleged to have been occasioned by negligent injury
in the performance of a surgical operation, evidence 'of. the
plaintiff's withdrawal from the hospital after the injury, on
account of lack of confidence in the surgeons, is inadmissible.
(p. 754).

6.   PHYSICIANS AND SURGEONS—*Admission of Testimony that the
     Law Requires Administration of Anesthetic by Doctor of
     Medicine Held Erroneous.*

     . If, in such action, alleged unskilful administration of the
anesthetic by a nurse is relied upon as a contributing cause
of the injury, admission of testimony to the effect that the law
requires such administration by a doctor of medicine is er-
roneous.   (p. 754).

7.   EVIDENCE—*Denial of Thorough Cross-Examination of Expert,
     Giving Opinion that Administration of Ether by Nurse is
     Negligence, is Error.*

     It is error to deny thorough cross-examination of an ex-
pert witness who has given it as his opinion, that administra-
tion of ether by a nurse is negligent, improper or unskillful
treatment.   (p. 755).

                         90 W. Va.

8.  SAME—*In Action for Damages for Negligence in Perform-*
    *ing Surgical Operation, Admissions of Assisting Nurse Made,*
    *After the Operation Held Hearsay and Not Res Gestae.*

    The admission of a nurse who assisted in the performance
    of a surgical operation, as to the manner in which it was
    done, made some days after occurrence of an injury alleged
    to have been caused by it, is not admissible evidence in an
    action to recover for the injury.   (p. 755).

9.  SAME—*Hypothetical Question Founded on Such Assertions*
    *of Fact as are Necessary to Elicit Opinion Held Unobject-*
    *ionable.*

    A hypothetical question founded upon such assertions of
    fact, based upon evidence, as are necessary to elicit the opin-
    ion of the witness to whom it is propounded, upon its subject
    matter, is unobjectionable.    It may properly ignore incon-
    sistent and contradictory contention set up against its pro-
    ponent, in the evidence.   (p. 756).

10. SAME—*Female Plaintiff in Action for Negligent Injury from*
    *Surgical Operation Cannot Testify that She was Rendered*
    *Incapable of Child-bearing Nor Give Her Physician's Opin-*
    *ion.*

    A female plaintiff in an action for damages for an injury
    alleged to have been negligently done in a surgical operation,
    working malformation of some of her organs and general
    debility, is not competent to testify that, by reason thereof,
    she is incapable of child-bearing.    Nor can she testify to an
    opinion expressed by her physician, to the effect that she is
    so incapacitated.   (p. 756).

11. PHYSICIANS AND SURGEONS—*In Woman's Action for Damages*
    *from Surgical Operation, Her Testimony to Loss of Sexual*
    *Inclination is Admissible.*

    In such case, her testimony to her loss of sexual inclina-
    tion, in consequence of the injury, is admissible.   (p. 756).

12. CUSTOMS AND USAGES—*Evidence of Custom and Usage Not*
    *Admissible Unless Pleaded But May be Admitted as to*
    *Matters Merely Incidental or Collateral.*

    Though evidence of a custom or usage relied upon as an
    element of a cause of action alleged is not admissible,   un-
    less the custom or usage has been pleaded, it is admissible
    as to matters merely incidental or collateral to the cause of
    action.   (p. 757).

13. PARTNERSHIP—*Representations Estopping Parties from Denying that they were Partners Need Not be Made in Person to the Party Relying Upon Them.*

To bind parties representing themselves to be partners, by estoppel to deny the relation, the representations need not have been made to the party relying upon them, in person. It suffices that the holding out was knowingly done, assented to or acquiesced in by the alleged partners, and known and acted upon by the party contracting with them as partners. (p. 757).

14. SAME—*In an Action Ex Delicto the Liability of all Partners is Not Essential to Recovery, and Verdict and Judgment May be Against Such as Are Liable.*

In an action *ex delicto* against parties sued as partners, liability of all of them is not essential to right of recovery. There may be a verdict and judgment against such of them as are liable and a judgment of *nil capiat* as to the others. (p. 757).

15. TRIAL—*Instruction Susceptible to Interpretation Varying from Law is Properly Refused.*

An instruction susceptible of an interpretation that would make it variant from the law is properly refused. (p. 758).

16. APPEAL AND ERROR—*If Errors Have Been Made in Rulings on Evidence, Requiring a New Trial, the Supreme Court of Appeals Will Not Inquire Into the Propriety of Refusal of a Peremptory Instruction.*

If, on the trial of an action, errors in the admission and rejection of evidence, calling for award of a new trial, have been committed, the appellate court will not inquire as to the propriety of the refusal of a peremptory instruction which, if given, would have required the jury to find for one of the parties. (p. 759).

Error to Circuit Court, Wyoming County.

Action by Ethel Cook against J. E. Coleman and others. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Dillon & Nuckolls,* for plaintiffs in error.

*R. E. Hughes* and *J. M. McGrath,* for defendant in error.

POFFENBARGER, PRESIDENT:

On this writ of error to a judgment for $10,000.00 against three physicians sued as partners doing business under the

name and style of Raleigh-Wyoming Hospital and charged with negligence in the performance of a surgical operation on the plaintiff, resulting in permanent injury, the assignments of error relate for the most part to rulings as to admission and rejection of evidence and the giving and refusal of instructions. The partnership was denied by an appropriate plea and many of the rulings complained of pertain to the issue joined on that plea. Most of the others pertain to the issue as to negligence.

In addition to the claim of an actual partnership, there is one of liability on the ground of a contract entered into by the plaintiff and the defendants, in reliance by the former upon representations of the existence of the relation by which the latter are estopped to deny it. In actions for damages occasioned by mere wrongs unmixed with contract, it is said the latter ground of liability is not available, likely because, in such cases, the injured party cannot be deemed to have altered his position in reliance upon the representation or holding out, and because there is no element of service or agency in the transaction. *Shepard* v. *Hynes,* 104 Fed. 449, 52 L. R. A. 675; *Brudi* v. *Luhrman,* 26 Ind. App. 221. In this case, however, the duty conferring the right of the plaintiff, the existence and breach of which are alleged, arose out of a contract. Though the action is one *ex delicto;* trespass on the case, the liability alleged rests upon and grows out of a contract. Relying upon the representation or holding out, the plaintiff, according to the evidence adduced by her, entered into a contract with the defendants, imposing upon them a duty they have violated to her injury and detriment, wherefore the case is not within the exception to the general rule, invoked in resistance of evidence admitted and instructions given, and in support of instructions refused. No ground is perceived upon which a contract for service of the kind involved here can be differentiated in this respect, from an ordinary commercial contract. Technically, the action is not on the contract, but, substantially, it is.

Although stoutly denied in some instances and in others not, one or more admissions of the partnership relation, on the part of each of the defendants, were testified to by the

plaintiff's husband and other witnesses. The husband swears Dr. Logan and Dr. Hunter each admitted it to him. Dora Cook swears Dr. Logan admitted it to her. Oswell Cook swears Dr. Coleman made a like admission to him. Wiley Bowers swears Dr. Hunter stated to him, in the presence of Dr. Coleman, that they were partners. All of these declarations purport to have been made in connection with the business of the hospital. All of them, except one, seem to have been before the alleged act of negligence, and it is unimportant that the excepted one was made at about the time of the departure of the plaintiff from the hospital. Some sort of connection of all of the defendants with the hospital is admitted. They all say Dr. Coleman was the owner. Dr. Logan was at least an employee of Dr. Coleman. Dr. Hunter was there often. He had the practice of certain neighboring coal companies and his patients were admitted to the hospital, in cases of necessity, under a contract between it and him or their employers. The names of all appeared on the bill-heads of the hospital, Dr. Coleman being designated "Surgeon in Charge," Dr. Logan "Resident Surgeon" and Dr. Hunter, "Associate." Witness W. H. H. Stewart swears all three were in the operating room when his wife was taken into it for an operation, while the plaintiff was still there. In connection with this evidence, the plaintiff and other witnesses were permitted to testify to the general understanding in the community, that the defendants were operating the hospital as partners, and their reliance upon it in their transactions with the defendants and the institution.

Though separately made, the admissions taken together are evidence of actual partnership. *Gordon* v. *Bankard,* 37 Ill. 147; *Bancroft* v. *Haworth,* 29 Ia. 462; *Beyer* v. *Weston,* 16 Me. 261; *Currier* v. *Silloway,* 1 Allen (Mass.) 19; *Smith* v. *Collins,* 115 Mass. 388; *Armstrong* v. *Potter,* 103 Mich. 409; 9 Ency. Ev. 545. In connection with the admissions and the testimony that it was relied upon, the evidence of general reputation was clearly admissible. *Werner Co.* v. *Calhoun,* 55 W. Va. 246; *Gilpin* v. *Temple,* 4 Har. (Del.) 190; *Gaffney* v. *Hoyt,* 2 Idaho 184; *Marks* v. *Hardy,* (25 Ky.),

78 S. W. 864; *Frank* v. *J. S. Brown Hardware Co.,* 10 Tex. Civ. App. 430.    Dr. Logan resided in the town in which the hospital was located and Dr. Hunter near it.    They and Dr. Coleman were in very frequent attendance upon the hospital.    These circumstances making their knowledge of the alleged reputation highly probable, if it existed, are to be added as elements in the ground of admissibility. *Gay* v. *Fretwell,* 9 Wis. 186.    This evidence of reputation, however, is admissible only to prove liability by estoppel, not the existence of an actual partnership.    9 Ency. Ev. 547-8.

The infirmity for remedy of which the plaintiff entered the hospital and was operated upon, according to her declaration and testimony, was a laceration of the neck of the womb, due to childbirth some three or four years before she was operated upon.    The operation, however, included an alleged attempt to remedy another laceration of the perineum, occasioned in the same way and at the same time.    That she had both ailments and that proper treatment required correction of both is fairly well sustained by evidence and not very strongly denied in the testimony. About two days after the operation, there was an indication of a fistula making an opening between the vagina and rectum, and its existence was confirmed shortly afterward.    The contention on the part of the plaintiff is that this was produced by a negligent or unskillful use of one of the instruments used in the operation and that an operation in the region of the fistula was neither necessary nor authorized.    On the other hand, it is contended that it was both authorized and necessary and that the fistula was the result of unavoidable infection. After the fistula was discovered, an unsuccessful effort was made to remedy it.    A second effort was proposed and declined and the plaintiff was taken to another hospital at which, after the infection was eliminated and the tissues strengthened, the trouble was remedied in the third or fourth operation performed there.    She entered it about February 14, 1919, and was discharged in the following June.

An assignment of error is based upon the overruling of a motion to strike out evidence to the effect that the plaintiff left the Raleigh-Wyoming Hospital, declining to permit a

third operation there, on account of lack of confidence in its surgeons. Though perhaps not important, this evidence was inadmissible. Neither her abandonment of the hospital nor her motive for so doing was a part of the *res gestae,* and we perceive no ground upon which the evidence of it can be admitted. The anesthetic was administered by a nurse and the plaintiff relies upon alleged imperfect administration thereof, as having contributed to or caused the injury she claims Dr. Logan inflicted upon her, in the performance of the operation. Being blindfolded when the either was administered, she cannot say whether the physicians were then present or not, but she thinks they were not. They say they were and that the ether was properly given under the supervision of Dr. Hunter. She claims to have been sufficiently conscious at one time to know she felt pain and flinched or flounced, while on the operating table. In connection with this evidence, an expert witness was permitted to say over objection that, in his opinion, administration of ether by a doctor of medicine is legally required. As neither the common law nor any statute of this state requires such administration, the ruling was clearly erroneous. In respect of the evidence of another expert witness, as to the propriety of administration of ether by a nurse, undue limitation or restraint of cross-examination is complained of. The nurse was shown to have had considerable experience in such administration and to be competent, in the opinion of her employer. A question substantially reciting her experience and the quality of her work in that line and asking the opinion of the witness, based thereon, was excluded. He might have adhered to his opinion, but he might have qualified it or admitted that it was not in accord with uniform practice. Manifestly, he should have been required to answer the question. His evidence on that point, taken in connection with the testimony of the plaintiff, was strongly probative in her favor, and the defendants should have been allowed to test the soundness of his opinion thoroughly.

Testimony of the plaintiff to the effect that, after discovery of her new trouble, the head nurse had told her it was due to the necessary depth of the incision made by the surgeon,

was admitted over an objection and an instruction to the jury to disregard it. was refused. · Constituting no·part of , the res gestae and being mere hearsay, it should have been excluded. *Peterson* v. *Paint Creek Collieries Co.*, 71 W. Va. 334, 341.

No impropriety is perceived in the hypothetical question propounded to two of the expert witnesses examined by the plaintiff and no specific defect in it has been pointed out. It sought the opinions of the · witnesses upon the plaintiff's case hypothetically stated, as to the cause of her unlooked for condition after the first operation, and they answered it favorably to her, saying the injury was· occasioned, in their opinion, by a mechanical agency, contrary to the contention of the defendants, that it had been. caused·by ·infection fol- lowing a careful and skillful operation. It assumes no as- sertions of fact, unsupported by evidence, and it is predicated upon all that are necessary· to elicit an opinion upon its sub- ject matter. It omits inconsistent and contradictory con- tentions of fact relied upon in defense, but it was not in- cumbent upon the plaintiff to include .them.

Over an objection, the plaintiff was permitted to testify to her barreness in consequence of the alleged injury, basing the assertion upon the opinion of the surgeon by whom it was remedied and her own claim of lack of sexual desire. In so far as the assertion of barrenness stands upon the alleged opinion of the surgeon and physical incapacity due to mal- formation of organs and general debility caused by the negli- gence charged, if any, it is inadmissible. The professional · opinion testified to is mere hearsay and physical incapacity to carry and deliver a child is a question of medical and sur- gical science, as to which she is obviously incompetent to ex- press an opinion. *Dominick* v. *Randolph*, 124 Ala. 557 ; *Peo- ple* v. *Olmstead*, 30 Mich. 431; *Lush* v. *McDaniel*, 35 N. C. 485 ; *Dushane* v. *Benedict;* 120 U. S. 630 ; *Nichols* v. *Oregon, S. L. & R. Co.*, 25 Utah 240. Loss of sexual desire, if any, is a fact within her own knowledge, to which she can properly testify, of course; and, in so· far as barrenness depends or is predicated on that, it may be considered. Loss of sexual in- clination, if any, is a physical impairment, constituting a

proper element of damages, wherefore evidence as to it was properly admitted.

By way of refutation of the inference of association or partnership attempted to be raised by the introduction of the bill-head carrying the names of the defendants, they offered evidence to prove a general custom of hospitals, to carry the names of physicians and surgeons on their stationery, who have no interest in the institutions, as mere matter of advertising or information to the public, which the trial court rejected.    This evidence is obviously not within the rule inhibiting proof of a custom or usage not pleaded. The custom in question is not an element, factor or part of the contract involved.   It relates to the mere status of parties and it was offered only to repel an inference of such status, which it was apprehended the jury might raise from certain evidence adduced by the plaintiff.    The rule relied upon to justify the exclusion is stated in Jones, Ev. sec. 123b, as follows:    ''So, when a party relies on a local custom to govern his case, it must be pleaded and proved.''    The decisions invoked to sustain the ruling denied admissibility of proof of a custom or usage relied upon, as constituting part of the contract involved, but not pleaded.    They are manifestly inapplicable.

Instructions Nos. 1 and 2 given at the instance of the plaintiff conform in all respects to the principles and conclusions herein stated.    Alleged lack of proof of the partnership relation charged and inapplicability of the law of estoppel as to persons charged with liability, on the ground of their having held themselves out, or permitted themselves to be held out, as partners, are the principal grounds of objection.    These contententions have been disposed of.

Several of the instructions sought by the defendants and refused were variant from the legal conclusions herein stated, respecting liability as partners and estoppel to deny it. Nos. 8 and 10, if given, would have precluded a finding for the plaintiff, unless the jury believed there was an actual partnership.    No. 9 would have done likewise, unless the jury could have found that all of the defendants jointly contracted to treat the plaintiff.    It would have denied liability by way

of estoppel.    No. 19 would have had a strong tendency to·
mislead the jury.    It is susceptible of interpretation deny-
ing right of recovery on the ground of estoppel, in the ab-
sence of representations made to the plaintiff in person.· If·
true, it suffices that she acted upon a representation of part-·
nership relation, believed and accepted by her even though.
general in its nature and character.    As this is an action
*ex delicto,* non-liability of one of the defendants would not·
preclude a verdict against the others.    *Pence* v. *Bryant,*
73 W. Va. 126.    Hence, instruction 20 requested by the de-
fendants was properly refused.    Their instruction No. 21
has the same infirmity as their No. 19, wherefore it was prop-·
erly refused.    No.· 16 seeking exclusion of the evidence re-
lating to negligence in the administration of ether was prop-·
erly refused.    That evidence was obviously admissible. No.
14 seeking exclusion of evidence of loss of sexual desire was.
properly refused for reasons already stated.    No. 15 direct-·
ed against the evidence of incapacity to bear· children was.
too broad, wherefore it was properly refused.    It would·
have excluded all of such evidence.    No. 13 directed against.
the hearsay evidence of the cause of injury should have been·
given, since that evidence had been improperly admitted.

Instructions No. 11 requested by the defendants and re-·
fused, if given, would have directed a verdict for them. · It
goes to the sufficiency of the evidence to sustain a verdict for·
the plaintiff and partakes of the nature of a demurrer. If ·
the evidence improperly admitted vitiates the verdict and
calls for a new trial, there is no occasion to pass upon the·
correctness of the ruling in the refusal of the instruction..
In that event, a different case must be made before there can
be ·a proper verdict and judgment, whether such verdict·
shall be by direction of the court or not.    The proper course·
of procedure on a demurrer to evidence in a case in ·which
improper evidence has been admitted or proper evidence ex-
cluded, to the detriment of the complaining party, is to re-·
verse the judgment,· set aside the verdict and the demurrer·
and remand the case for a new trial.    *Dishazer* v. *Maitland,*
12 Leigh 525.    As to this, the authorities are not uniform,.
6 Ency. PL. & Pr. 445, but we think the reasoning of the·

court in the case just cited is sound.    The ruling in *Taylor* v. *B. & O. R. Co.*, 33 W. Va. 39, is not inconsistent with the rule in *Dishazer* v. *Maitland,* because the errors in admission of evidence in the former were regarded as harmless. In cases of prejudicial rulings as to evidence, the case is not properly made up for either the court or the jury. To make the demurrant waive his exceptions would work a hardship and injustice under the operation of a merely technical rule.    In the case of the demurree who had relied upon the rulings of the court in standing upon his evidence, it would work ranker injustice to exclude his evidence and render judgment against him, for he might be able to supply competent evidence on the rejection of the incompetent.    However, it may be in the case of a formal demurrer wholly withdrawing the case from the jury, except as to assessment of the damages, there can be no waiver of exceptions to evidence, by reason of a mere request for a peremptory instruction, and, whether the court erred in refusing it or not, the case goes back for a new trial, if evidence was admitted or rejected to the prejudice of the complaining party, and the case must be made anew.    Hence, no good purpose could be subserved by a determination of the propriety of the ruling on the instruction with the illegal evidence either in or out.    As we have it now, the case is not properly made up.    When it gets before the trial court again, it will have a different status, even though additional evidence should not be adduced, one upon which the trial court has not passed.    And additional evidence may work very radical changes in it.

Most of the improper evidence admitted as well as that rejected had direct and important bearing upon the vital issues in the case.    With the hearsay evidence out and the rejected evidence for the defendants in, it is impossible to say what the verdict of another jury will be, or what the verdict on the trial already had would have been, if the erroneous rulings had not been made.    The errors raise a presumption of prejudice to the defendants, which is not rebutted by disclosure of clear right in the plaintiff to the verdict she has obtained.    In such cases, there must be a reversal unless the court can see clearly that no prejudice or

injury resulted.    We are unable to say the jury could not properly have returned a different verdict on the question of liability.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*