RUBY RUBENSTEIN *v.* METROPOLITAN LIFE INSURANCE COMPANY

(No. 8456)

Submitted March 3, 1937. Decided March 16, 1937.

*W. K. Pritt, Hoffheimer & Stotler* and *Stewart Mc-Reynolds,* for plaintiff in error.

*D. E. Cuppett* and *D. E. Cuppett, Jr.,* for defendant in error.

RILEY, JUDGE:

The plaintiff, Ruby Rubenstein, instituted this action in assumpsit against the defendant, Metropolitan Life Insurance Company, on the total disability clause of a life insurance policy. To a judgment in favor of the plaintiff in the amount of $607.50, based upon a jury verdict, the defendant obtained this writ of error.

The declaration, which was filed in statutory form, alleged, among other things, that the plaintiff was totally and permanently disabled and that claim for said dis-

ability had been made and proof thereof furnished to the defendant.

In addition to pleas of non-assumpsit and non-liability, defendant filed a specification of defense, alleging, among other things, that proof of total and permanent disability had not been furnished as required by the policy, and that at the time of the institution of suit and at all times since the plaintiff was able to perform work and engage in business for compensation or profit. No written reply or replication to this specification of defense had been filed by the plaintiff prior to the trial. On the first day of the trial, an objection having been made to the introduction of testimony on behalf of the plaintiff, bearing on the furnishing blanks for proof of claim by the company, plaintiff's counsel notified the court and opposing counsel that on the following day they would tender a written replication to the specification of defense. On the day designated, the plaintiff filed, over defendant's objection, a replication to the specification of defense, alleging that the plaintiff had made demand on the defendant for the blanks upon which to make a proof of claim; that the defendant had not furnished the blanks and at all times denied the claim of the plaintiff for disability benefits, whereby the defendant had waived its right to demand proof of claim and was estopped from defending said action on the ground that proof of claim was not filed. Defendant's counsel then moved for a continuance on the ground of surprise, which motion was overruled by the court. Exceptions were taken to both rulings of the court.

The provisions of the policy of insurance sued on, relating to disability benefits, read:

"METROPOLITAN L I F E INSURANCE COMPANY * * * Hereby. Agrees, that upon receipt by the Company at its Home Office * * * of due proof, on forms which will be furnished by the Company, on request, that the insured has, * * * become totally and permanently disabled, as the result of bodily injury or disease

* * * so as to be prevented thereby from engaging in any occupation *and* performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, *it will,. during the continuance of such disability,* * * * Pay to the insured, * * * monthly income of $10 for each $1,000 of insurance, or of commuted value of installments, if any, under said Policy;" and further, "if the insured shall be able to perform any work *or* engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease, * * *." (Italics supplied.)

The plaintiff, aged 55 years, lived at Thomas, West Virginia, where he owned a meat and grocery store. He also owned a farm about seven miles from Thomas. About the middle of April, 1935, he developed an inflammatory condition of the gall bladder, which failed to respond to medical treatment. He was taken to a hospital at Cumberland, Maryland, where, on April 19th, he underwent an operation, the purpose of which was to drain the gall bladder. In this action, brought on October 22, 1935, the plaintiff claims that from the time of his operation, his physical condition was such as to bring him within the total and permanent disability clause of the policy.

A good deal of testimony, both medical and lay, was introduced on behalf of both parties bearing upon the plaintiff's physical condition, both before and after the operation. The witnesses who gave the medical testimony were Dr. Harry Bolton and Dr. John H. Miller, called by both the plaintiff and defendant, Dr. W. E. Whiteside, a witness for defendant, and Dr. Samuel Weisman, a witness for the plaintiff. Time will not permit a detailed summary of this medical testimony. Dr. Bolton, who attended Rubenstein at his first sickness and took him to the hospital for the operation, testified in part that he would not classify Rubenstein as totally and permanently disabled; that Rubenstein would not be fit

for hard manual labor; that he has been improving since the time of his illness; and that he could manage and supervise his farm and store and do the ordinary running around; that it would be a rather indefinite time during which the plaintiff's condition might last; and that he was unable to say if plaintiff will improve. On cross-examination, this witness defined total and permanent disability from a medical standpoint: "If I am to interpret it literally, my understanding of total and permanent disability would mean a man could not do anything for the rest of his life, anything at all. That would be my idea of permanent and total disability, would be my interpretation at that time." Dr. Miller testified in part that the plaintiff was not totally and permanently disabled; that he was not disabled for any of the lighter duties of managing and overseeing his farm and meat market; that plaintiff was able to get around and look after things as a normal man; that the percentage of disability was thirty, forty or fifty per cent, less than fifty probably. On cross-examination, this witness adopted the medical definition of total and permanent disability as given by Dr. Bolton; and when asked as to probability of improvement, he testified: "It is possible he will continue to improve, and it is possible he may not." Dr. Whiteside stated, among other things, that at the time he examined Rubenstein, the latter had a partial disability; that such disability should gradually decrease; and that plaintiff was not totally disabled. When asked whether the amount of disability plaintiff had would remain permanently, Dr. Whiteside replied: "It is pretty hard to decide. I have seen men get along under the conditions of that kind and apparently get back into usual work and do ordinary work, and I have seen cases where subsequently they have had to have an operation." Dr. Weisman testified that he did not think plaintiff would be able to undertake his usual or former duties of farming or butchering or any form of physical exercise because of the gangrenous gall bladder; that any undue exercise may cause a new eruption which would cause peritonitis; that plaintiff is totally and per-

manently disabled and will continue until the gall bladder is removed.

The lay witnesses testified variously as to plaintiff's physical condition before and after the operation. Testimony was introduced that plaintiff was able to do as much supervising in the butcher shop and on the farm, as he had done prior to the operation; and that he was able to do, and had been doing, a good deal of physical work in connection therewith. Other witnesses, however, state that although plaintiff had tried to work, he was unable to do anything; that when he leaned over to pick up any object, he would fall over like he was drunk; that he would get nervous and sweat; that his sister and wife had to run the business; that Ronald Gainer did the most of the butchering. The best summary we can make of the evidence on the question of plaintiff's disability is that it conflicts to such an extent, the trial court was unable, as a matter of law, to determine whether it preponderated in favor of either party. That being so, it was clearly the province of the jury to determine this issue of fact between the parties. Thus we answer the issue of fact raised by the ninth assignment of error, which was taken up and discussed under point seven of plaintiff in error's brief. For convenience in the treatment of the several other assignments, we shall refer to the points by number, as re-stated in plaintiff in error's brief.

Point one is that the plaintiff's replication to the defendant's specification of defense should not have been filed on the second day of the trial, or, if filed, the defendant's motion for a continuance should have been granted. Under Code, 56-4-22, if, in action on an insurance policy, "the plaintiff intends to rely upon any matter in waiver, estoppel, or in confession and avoidance of any matter which may have been stated by the defendant * * * (he) must file a statement in writing specifying * * * the matter on which he intends so to rely." This provision of the Code is mandatory. *Duncan* v. *Federal Union Ins. Co.,* 113 W. Va. 71, 166 S. E. 813; *Capehart* v. *Mutual Benefit etc. Association,* 111 W. Va. 317, 161 S. E. 609. Under our well settled practice, the court, in its

discretion may permit the filing of a special replication during the course of the trial. *Harvey* v. *Parkersburg Insurance Co.*, 37 W. Va. 272, 16 S. E. 580, 16 L. R. A. (N. S.) 1250, note; *Levy* v. *Scottish Union etc. Ins. Co.*, 58 W. Va. 546, 550, 52 S. E. 449; 47 L. R. A. (N. S.) 346n, 442n. With the filing of the replication, the court had the sound discretion to grant or refuse the defendant's motion for a continuance. *Harvey* v. *Parkersburg Insurance Co.*, *supra*; *Levy* v. *Scottish Union Ins. Co.*, *supra.*The granting of a continuance was not a matter of right, but only the exercise of the sound discretion of the court. The defendant knew what notice of claim it had received, and it knew of the correspondence which had passed between it and the plaintiff's attorney. Defendant did not state in what manner it had been taken by surprise, nor was any reason given why it could have not proceeded in the trial of the case. Under all the circumstances, we think that there is no reversible error in this action of the trial court in the filing of the replication and refusal of the motion for a continuance.

Defendant's counsel takes the position that the evidence as to wavier of the proof of claim is insufficient. They say there was no denial by the insurance company of liability such as would constitute a waiver of proof of claim. However, we think otherwise. Under date of October 2, 1935, the defendant wrote to Rubenstein as follows:

> "We have carefully studied the reports in connection with your claim. * * * We regret to inform you that the facts and evidence submitted to us do not appear, in our opinion, to establish a claim that could be allowed under the terms of your policy at this time. * * * In the circumstances, we, of course, cannot favorably consider your claim. * * * (Signed) E. J. Spellman, Supervisor."

Again, on November 9, 1935, defendant wrote to the plaintiff as follows:

> "This supplements our letter of October 9, and refers to yours of October 4. * * * We could

not, as we previously informed you, favorably regard your claim because it was the medical opinion that you are not totally and permanently disabled, but rather that only a temporary disability exists. Resumption of work was estimated in a few weeks' time. * * * (Signed) E. J. Spellman, Supervisor."

These letters, we think, are decidedly strong in their denial of the defendant's liability under the policy. Also bearing on the question of waiver, plaintiff's counsel, under date of October 15, 1935, wrote the defendant requesting that blanks be furnished without delay for making proof of loss, if such further proof be required. No blanks were ever sent by the company in response to this request for them. Defendant objected to the introduction of a carbon copy of this letter, in the absence of an early demand for the original. The carbon copy of this letter was admissible for two reasons: First, because it was a duly authenticated carbon copy. *Fayette Liquor Co.* v. *Jones,* 75 W. Va. 119, 83 S. E. 726; *Elias* v. *Boone Lumber Co.,* 85 W. Va. 508, 102 S. E. 488. And, second, the original letter was actually mailed to defendant, and defendant had acknowledged receipt of the original letter, under date of October 18, 1935. *Phoenix Ins. Co.* v. *Thomas,* 103 W. Va. 574, 138 S. E. 381; *Waddell* v. *Trowbridge,* 94 W. Va. 482, 119 S. E. 290.

Under the second point, the defendant relies upon the admission of plaintiff's testimony to the effect that he was advised by three different doctors that another operation was necessary. This evidence was clearly inadmissible. However, this testimony bore very little on the plaintiff's present physical condition. Its effect was greatly diminished by the testimony of Dr. Weisman that an operation was necessary, which fully corroborated the substance of the hearsay testimony. 3 Am. Juris., 581, sec. 1028, note 17. Counsel cite *Cook* v. *Coleman et al.,* 90 W. Va. 748, 111 S. E. 750. In that case, there was a reversal for reasons other than the hearsay testimony. The admission of hearsay testimony, while erroneous, does not constitute reversible error, unless it is prejudicial. 3 Am. Juris., 576, sec. 1027, note 12. We do not

think that this testimony was prejudicial to defendant so as to constitute reversible error.

The admission of the letter from defendant to plaintiff's counsel of October 28, 1935, is also assigned as error, because it was dated after suit was filed. This letter is more favorable to the defendant than it is to the plaintiff, as it suggests that there has not been an unconditional denial of liability. Therefore, its admission was not prejudicial to the defendant, and does not constitute reversible error. *Walker* v. *Strosnider*, 67 W. Va. 39, 67 S. E. 1087, 21 Ann. Cas. 1; *Bardach Iron etc. Co.* v. *Charleston Port Terminals*, 143 Va. 656, 129 S. E. 687; 3 Am. Juris., 581, sec. 1028, note 7, and cases cited.

As the third point, defendant's counsel say that instruction No. 2 in regard to waiver of proof of claim was not supported by the evidence, and therefore, was erroneous. We have already discussed the question of the evidence bearing on the waiver of proof of claim. This assignment of error, we think, is without merit.

In plaintiff's instruction No. 3, relied upon as the fourth point, the court instructed the jury that "an insured is entitled to the protection which he buys and for which he pays." The part of instruction No. 3, just quoted, is an abstract statement of law. However, it is a correct statement of the law. *Wade* v. *Mutual Benefit and Health Ass'n.*, 115 W. Va. 694, 177 S. E. 611. Moreover, this instruction is merely a part of an instruction otherwise given in proper form. It was not calculated to inflame the jury or to create a prejudice or bias in their minds. Certainly, it was not misleading, or incorrect. Under the circumstances, it is not prejudicial. Unless calculated to mislead the jury, it does not constitute reversible error. *Chaney* v. *Moore*, 101 W. Va. 621, 134 S. E. 207, 47 A. L. R. 800; *Bond* v. *Balt. & O. R. Co.*, 82 W. Va. 557, 96 S. E. 932, 5 A. L. R. 201; *Hyde* v. *U. S.*, 225 U. S. 347, 56 L. Ed. 1114, 32 Sup. Ct. 793, Ann. Cas. 1914A, 614; 3 Am. Juris., 632, sec. 1107, notes 15 and 16.

The defendant's fifth point requires a review of the provisions of the policy bearing upon total and per-

manent disability. Defendant's counsel say, under this assignment of error, that plaintiff's instructions Nos. 1, 2, 3 and 5, are erroneous in that they state in the disjunctive the occupations which, if the plaintiff was unable to perform, the jury should find their verdict for him. Plaintiff's counsel take the position that because a part of the policy as to employment is in the conjunctive and another part in the disjunctive, the policy is ambiguous, and therefore, should be construed most favorably to the plaintiff. The policy's provisions, however, disclose that there is no ambiguity in the disability clause. The policy provides, in effect, that the liability will be paid if the plaintiff "become totally and permanently disabled * * * so as to be prevented thereby from engaging in any occupation *and* performing any work for compensation or profit." In a later provision, the policy reads that "if the insured shall be able to perform any work *or* engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease." This earlier part of the policy, above referred to, covers, in express terms, all occupations and work. The latter provision is in the disjunctive and necessarily so, because it is a defeasance clause, providing for a defeasance when the insured shall be able to perform any work or engage in any business. On this point raised by counsel, the policy is clear. Therefore, the construction, under no condition, must be in contravention of its express terms. In other words, the instructions in question, to be sustained, must be correct in themselves, in the light of the provisions of the policy and the evidence.

The instructions are objected to on the ground that the plaintiff's claimed total and permanent disability is predicated upon his disability "to engage in a practical manner in useful work, whether his accustomed vocation *or* another * * *." Counsel take the position that this part of the instruction is in the disjunctive; that it will permit a recovery in the event that the jury should find either that the plaintiff was unable to carry on his own vocation, or another vocation. We agree with counsel

that if this instruction permitted the jury to find defendant liable in the event that the plaintiff was unable to carry on his own vocation without any disability as to all other vocations or work, the instructions are erroneous, and prejudicially so. *Jones* v. *Connecticut General Life Ins. Co.*, 114 W. Va. 651, 173 S. E. 259; *White* v. *Aetna Life Ins. Co.*, 117 W. Va. 214, 185 S. E. 236. But these instructions cover all work and employment. The words "useful work" are sufficiently broad to cover all lines of endeavor. In a case like this, an insurer could not ask for a more general term in an instruction bearing upon the disability of the claimant to perform work. The words, "whether his accustomed vocation or another," are simply descriptive of the words "useful work." Not only are they descriptive, but they are all inclusive in their description. For a homely example, let us take a simple sentence: "He likes all men, whether good or bad." Could it be said that the verb in that sentence does not apply to all men? We think not. And equally we think that these instructions, complained of, are directed toward all useful work, without any qualification or limitation. Under this view, they are not erroneous.

The disability clause of the policy provides benefits in case the insured shall "become totally and permanently disabled, * * * and that said disability has already continued uninterruptedly for a period of at least three months, * * *." In addition, the policy contains a defeasance clause to the effect that with the ceasing of disability, the benefits shall cease.

Defendant's counsel, under their sixth point, say that instructions Nos. 1, 2, 5 and 6 are erroneous in that they direct the jury to find for the plaintiff on the theory of temporary disability.

Plaintiff's instruction No. 1, according to defendant, defines the term "total and permanent disability," so as to make it applicable only to "total disability." Under this definition, it is contended the jury could find that an insured afflicted with a temporary illness, such as influenza, was totally and permanently disabled. This

instruction is stated in the abstract, but it is incomplete. We think, however, it is cured by the definition of total and permanent disability contained in defendant's instruction No. 9, and running through the other instructions.

The objection to plaintiff's instructions Nos. 2 and 5, under the sixth point, is that the jury is directed to find for the plaintiff if they believe the disability "has continued uninterruptedly for at least three months * * *" and "until the bringing of this suit." Counsel say that the trial court confused the three-months provision in the policy with a somewhat similar provision in the case of *Triplett* v. *Equitable Life Assurance Society,* 117 W. Va. 537, 186 S. E. 124, in which the policy read: "* * * and such total disability shall be *presumed* to be present when it is present and has existed continuously for not less than three months." That case, however, was decided after the trial of the case at bar. *Jones* v. *Ins. Co., supra,* is also relied upon by defendant's counsel in support of the objection to plaintiff's instructions Nos. 1, 2, 5 and 6. In the *Jones* case, the policy provided, as a necessary condition for the benefits, that presumptively, disability shall continue during the insured's lifetime. However, these instructions must be read solely in the light of the provisions of the policy sued on. This policy contains no presumption of total and permanent disability in the event that the disability has continued for a period of at least three months. It provides, however, for the payment of benefits "during the continuance of the disability," and further, that benefits shall cease when the disability ceases. Under the disability clause of the policy in question, absolute proof of total disability for a lifetime is not required as a condition precedent to recovery. It is sufficient for the evidence to show total disability which will continue for an indefinite period of time.

We are fully aware that a bad instruction will not be cured by a good one. *Ward* v. *Ward,* 47 W. Va. 766, 35 S. E. 873; *Osborne & Co.* v. *Francis,* 38 W. Va. 312, 18 S. E. 591, 45 Am. St. Rep. 859. But all of these instructions must be considered in order to determine whether

or not they confused the jury. In the instant case, the least possibility of confusion, on the point raised by the sixth assignment of error, is dissipated by defendant's instruction No. 9, in which the jury was told that plaintiff must prove by a preponderance of the evidence, "that his disability is more than temporary in its character and in all human probability will continue for a long and indefinite period of time."

Defendant's counsel further complain that the letters, relied upon by the plaintiff for the purpose of showing denial of liability and thereby of proof of claim was waived, were written in the month prior to the bringing of this suit. And not until the letter of October 15, 1935, written by plaintiff's counsel, was any demand made for the furnishing of blank proofs of claim. It is therefore contended that the verdict of the jury in the amount of $607.50 made up as shown by the bill of particulars for six months' disability benefits from April 19, 1935, to October 19, 1935, in the amount of $600.00, and interest in the amount of $7.50, cannot be sustained. We are cited to the case of *Hayes* v. *Prudential Ins. Co. of America*, 114 W. Va. 323, 171 S. E. 824, in which the court stated that the plaintiff therein was not entitled to disability benefits until the company had notice of the total and permanent disability. The policy sued on in that case provided that "The first monthly payment (of disability benefits) shall be made immediately upon receipt by the company of due proof of such disability * * *." In the instant case, the policy expressly provides: "Such payments shall begin as of the date of the commencement of such disability, provided, however, * * * such payments (shall) begin as of a date, not more than six months prior to the date of receipt of the required proof." This difference between the clauses of the two policies is sufficient to distinguish clearly the *Hayes* case from the instant case.

From our examination of the record and briefs, we find no prejudical error. Therefore, the judgment of the trial court is affirmed.

*Affirmed.*