JACOB BROIDY *v.* METROPOLITAN LIFE INSURANCE COMPANY

(No. 9048)

Submitted May 7, 1940. Decided June 11, 1940.

*J. Harper Meredith,* for plaintiff in error.

*Harrison Conaway* and *Joseph B. Hearst,* for defendant in error.

MAXWELL, JUDGE:

This action is based on the total and permanent disability clauses of two life insurance policies. In the Circuit Court of Marion County, the plaintiff recovered judgment, on verdict, against the defendant for $1070.00. Writ of error was awarded the defendant.

The policies, each in the sum of $5,000.00, were issued in 1924, and 1926, respectively. Under the total-and-permanent-disability adjunctive clause of each policy, provision is made for the payment of fifty dollars per month to the insured.

The pertinent provisions of the identical clauses under consideration are these:

"METROPOLITAN LIFE INSURANCE COMPANY IN CONSIDERATION * * * HEREBY AGREES, that upon receipt by the Company at its Home Office in the City of New York of due proof, on forms which will be furnished by the Company, on request, that the insured has, while said Policy and this Supplementary Contract are in full force and prior to the anniversary date of said Policy nearest to the sixtieth birthday of the insured, become totally and permanently disabled, as the result

of bodily injury or disease occurring and originating after the issuance of said Policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability, 1. Waive the payment of each premium falling due under said Policy and this Supplementary Contract, and, 2. Pay to the insured * * * a monthly income of $10 for each $1,000 of insurance, or of commuted value of instalments, if any, under said Policy. * * *

"Notwithstanding that proof of disability may have been accepted by the Company as satisfactory, the insured shall at any time, on demand from the Company, furnish due proof of the continuance of such disability, but after such disability shall have continued for two full years the Company will not demand such proof more often than once in each subsequent year. If the insured shall fail to furnish such proof, or if the insured shall be able to perform any work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease, and all premiums thereafter falling due shall be payable according to the terms of said Policy and of this Supplementary Contract."

In November, 1937, the plaintiff, well within the sixty-year limitation of the quoted supplementary provisions of his life insurance policies, became seriously ill from pneumonia. He was confined to his home for nine or ten weeks, during the first two or three weeks of which period his condition was critical. After the ten-weeks period he had sufficiently improved to be able to make visits to his physician's office for consultation and treatment.

For a number of years prior to his illness, plaintiff had been engaged in operating a bakery in the City of Fairmont. On or about the third day of May, 1938, the plaintiff, with the consent of his physician, began to go daily

for two or three hours to his place of business, and was continuing in that course at the time of the trial in April, 1939. While he was absent, during the pneumonia illness, his wife supervised the business, and the testimony for the plaintiff tends to prove that she was still conducting it when the trial was held; that although the plaintiff goes to the bakery daily and assists somewhat in a retail store or shop operated in connection with the bakery, the extent of his assistance is almost negligible. According to testimony for the plaintiff, his memory has been impaired, and he suffers from nervousness and decreased vitality. He testified that sometimes he feels fairly well, but that when he endeavors to exert himself he is unable to carry on. His physician, a man of mature experience and high professional standing, testified unequivocally that in his opinion the plaintiff is totally and permanently disabled in consequence of his illness from pneumonia and its aftermath; and that there has developed an inflammation of the muscular tissues of the heart which condition is termed myocarditis. This physician, Dr. L. D. Howard, testified that after the plaintiff's condition had shown improvement in the spring of 1938 he (Dr. Howard) at first advised the plaintiff against his returning to his place of business, but, a little later, because of plaintiff's worry and extreme nervous condition, he gave approval to the plaintiff's going to his shop for a few hours daily in the hope that the nervousness and worry would thereby be lessened; that the plaintiff's anemic condition has improved, but that his general condition is no better. Dr. Howard further testified: "I believe he (plaintiff) is permanently disabled and will never be able to earn his livelihood, if he follows the best advice regarding his physical condition."

The defendant takes the position that the plaintiff is not totally and permanently disabled within the meaning of the subsidiary contract made part of the two policies in suit. For the defendant certain lay witnesses testified that the physical appearance of the plaintiff seems normal. One of these witnesses visited plaintiff's shop

and observed him wait upon two customers who were making small purchases. Also, medical testimony for the defendant is at variance with Dr. Howard's testimony. Drs. C. M. Ramage, Wm. A. Welton, and J. R. Tuckwiller testified, in substance, that they had made examinations of the plaintiff at the request of the insurance company and that they could not find anything wrong with him. The first two named in this group had made examinations a short time before they gave their testimony and found no symptoms of myocarditis. Dr. Ramage also testified that myocarditis is not necessarily either a fatal or a disabling disease. On cross-examination, Dr. Welton was asked: "Do you or do you not recognize Dr. L. D. Howard as a competent heart man practicing medicine in this town?" to which question he answered: "I do."

Here is a jury question. Likely, if judges of this Court had been sitting on the jury, they would have hesitated to concur in a verdict for the plaintiff, but we cannot on that basis disturb what has been done. Under well established law, if the jurors saw fit to give to the evidence for the plaintiff a preponderating weight over the evidence for the defense, they were within their special province in so doing. A total disability question is for jury determination. "Total disability is a relative term and is usually a matter of fact to be determined by the jury under proper instructions of the court." *Jones* v. *Connecticut General Life Insurance Co.,* 114 W. Va. 651, 173 S. E. 259. That proposition was reiterated in *Frazee* v. *New York Life Insurance Co.,* 120 W. Va. 81, 196 S. E. 556.

In appraising cases which arise under total and permanent disability clauses of life insurance policies, there must ever be borne in mind the basic fact that total and permanent disability does not denote absolute helplessness, "but means the inability of the insured to engage in practical manner in useful work, whether in his accustomed vocation or another. Total disability is a relative term. Each case must be considered on its own

facts." *Hayes* v. *Prudential Insurance Co. of America,*
114 W. Va. 323, 171 S. E. 824. That axiom was repeated at
this term of Court in the case of *Maroney* v. *Prudential
Insurance Co. of America,* 122 W. Va. 327, 9 S. E. (2d) 872.
As evidenced by the two cases just cited and the case of
*Rubenstein* v. *Metropolitan Life Insurance Co.,* 118 W. Va.
367, 190 S. E. 531, an insured may be deemed and adjudi-
cated totally and permanently disabled within the mean-
ing of an insurance clause such as at bar, although he may
attempt to perform duties of either substantial or incon-
sequential nature. A total disability clause, we stated in
*Cody* v. *John Hancock Mutual Life Insurance Co.,* 111 W.
Va. 518, 163 S. E. 4, 86 A. L. R. 354, "does not mean absolute
incapacity, mental or physical. The phrase must be con-
strued rationally and practically."

In construing the clauses under consideration, perma-
nent disability is not to be taken to mean disability which
necessarily is for the lifetime of the insured, without hope
or possibility of recovery. It is sufficient if total dis-
ability shall have been uninterrupted for a period of
three months and in all probability will continue for an
indefinite and indeterminate period. The provisions for
payment "during the continuance of such disability" and
cessation of payments upon the improved condition of the
insured, negative a construction that permanent dis-
ability means for the life of the insured. Consult: *Penn
Mutual Life Insurance Co.* v. *Milton,* 160 Ga. 168, 127 S.
E. 140, 40 A. L. R. 1382; *Equitable Life Assurance Society* v.
*Serio,* 155 Miss. 515, 124 So. 485; *Maze* v. *Equitable Life
Insurance Co. of Iowa,* 188 Minn. 139, 246 N. W. 737; *Jeffer-
son Standard Life Insurance Co.* v. *Hurt,* 254 Ky. 603, 72
S. W. (2d) 20; *Plummer* v. *Metropolitan Life Insurance
Co.,* 132 Me. 220, 169 Atl. 302; *Laupheimer* v. *Massachusetts
Mutual Life Insurance Co.,* 224 Mo. App. 1018, 24 S.
W. (2d) 1058; *Rubenstein* v. *Metropolitan Life Insurance
Co.,* 118 W Va. 367, 378, 190 S. E. 531.

It does not follow from verdict and judgment for a plain-
tiff on a claim such as here presented that the matter is
closed for the remainder of the life of the insured; and

that regardless of possible subsequent improvement in his condition resulting in restoration of ability to engage in gainful occupation, he may continue to receive permanent disability benefits. Insurance companies, under such disability clauses, do not assume an obligation of that sweeping character. A judgment as above mentioned is a judicial determination of the insurer's liability for payments due, and establishes status on the basis of the insured's physical or mental condition at the time of trial. While that basis remains, liability will continue. Patently, a determination of liability is grounded on adequate proof of total and permanent disability existing at time of trial and through a period prior thereto. But neither judges nor jurors are invested with power of prescience whereby they can presume to say what will be the status of an insured in years ahead. It would approach the unreasonable to assert that because of such judicial ascertainment and adjudication the question should stand closed for the future. In a given case it would be possible that within a few months after prevailing in a judicial inquiry under such clause, the insured, to the surprise of medical experts and others, might recover from disability so completely that all would agree that there remained absolutely nothing wrong with him. In such situation insistence on blind adherence to the former adjudication of total and permanent disability, in face of the later facts, would not be very impressive, to say the least. Consult: *Prudential Insurance Company of America* v. *Zorger*, 86 F. (2d) 446; 108 A. L. R. 498.

The last paragraph (quoted above) of the disability contract at bar provides that though "proof of disability may have been accepted by the Company as satisfactory", there shall remain the requirement that such disability be continuous to entitle the insured to prolongation of payments. By agreeing on this provision the insurer emphasized its importance and the insured recognized its fairness. Whether the company accepts the "proof of disability" voluntarily or by judicial fiat can make no difference in the operation and effect of the quoted provision.

And then, too, it must not be overlooked that the contract clauses at bar only require the insurer to make stated monthly payments to the insured "during the continuance" of total disability.

Because of the immediately preceding considerations we are the more impressed that the jury's finding herein should not be disturbed.

Numerous instructions were given to the jury at the instance of the defendant. The only defense instruction refused was a peremptory one. That refusal was not error because the issue presented was properly for jury determination.

The defendant assigns as error the action of the court in giving to the jury plaintiff's instructions numbers 1, 2, 3 and 5, which are as follows:

1. "The court instructs the jury that in order that the plaintiff recover in this case, under his policies of insurance, it is not necessary that he be totally and permanently disabled for the rest of his natural life; that if the jury believe from the preponderance of the evidence of the case that the plaintiff, Jacob Broidy, by reason of disease or diseases, was incapable of engaging in a practical manner in useful work, whether his accustomed vocation or another, for the period of time covered by this suit and that such disability existed at the time of the bringing of this suit and had existed for at least ·three continuous months without interruption, before claim was made for such disability and the payment of the monthly income provided for in said policies, *and that said disability is more than temporary and in all probability will continue for an indefinite period of time,* and that he was not sixty years of age at the commencement of said disability, then he is entitled to recover for the unpaid monthly installment income provided for in the policies with proper interest thereon, together with the amount paid as premiums for the commencement of disability up to the date of the bringing of this suit.

2. "The court further instructs the jury that while the insurance policies sued on and in evidence in this case

provide that before the insured, Jacob Broidy, is entitled to receive the monthly benefits and income set out in said policies that he must have been totally and permanently disabled as a result of bodily injury or disease occurring or originating after the issuance of said policies, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability had already continued uninterruptedly for a period of at least three months, yet the jury are further instructed in this connection that the total *and permanent* disability contemplated by these policies does not mean a state of absolute helplessness, but means the inability *for an indefinite period of time,* to do substantially all of the material acts necessary to the prosecution of any occupation or employment and performing any work for compensation or profit, in substantially the usual manner in which such occupation or work for compensation or profit is prosecuted.

3.   "The court further instructs the jury that as a matter of law 'an insured is entitled to the protection which he buys and for which he pays', and if the jury believe from the weight of the evidence of this case that the insured, Jacob Broidy, paid a special premium of Eighteen dollars and seventy cents annually in addition to the regular premium paid by him for said policies, and that said sum of Eighteen dollars and seventy cents per year was paid by him for the purpose of providing for payment to him and was the consideration for disability benefits and the monthly income provided for in the policies, in event he became totally and permanently disabled, as set out in said policies, and that said Jacob Broidy became totally and permanently disabled so as to render him unable to engage, in a practical manner in useful work, whether his accustomed vocation or another, *and that in all probability said disability will continue for an indefinite period of time,* then your verdict shall be for the plaintiff.

5.   "The court instructs the jury that if they believe from the weight of the evidence of this case that the plaintiff, Jacob Broidy, was insured under the policies of in-

surance in evidence in this case against total and perma-, nent disability occurring or originating after the issuance of said policies, and arising from bodily injury or disease, and that at the time of the disease complained of and testified about, he had not reached the age of sixty years, and that he had paid the premiums of Eighteen dollars and seventy cents annually for such protection as provided for in said policies, and that said policies at the beginning of his sickness were in force, and had continued uninterruptedly for a period of at least three months and that thereafter he gave due notice to said company and made claim for the income provided for in said policies, and furnished said company with due proof of claim; and if the jury further believe from the preponderance of the evidence of this case that the plaintiff, Jacob Broidy, became sick from disease or diseases, after the issuance of said policies of insurance, and that said sickness continued uninterruptedly for at least three months and that by reason thereof he became unable to engage in a practical manner in useful work whether his accustomed vocation or another, and that such disability continued until the bringing of this suit, *and will in all probability continue for an indefinite period of time,* then your verdict should be for the plaintiff, not however, to exceed the sum sued for."

These instructions follow closely the instructions for the plaintiff in the case of *Rubenstein* v. *Metropolitan Life Insurance Company, supra.* The only deviations are indicated by italicizations which are herein supplied for emphasis. The phrases thus emphasized were not employed in the Rubenstein case. In the opinion there, in discussion of the plaintiff's instructions, we stated that "the least possibility of confusion" respecting those instructions "is dissipated by defendant's instruction No. 9, in which the jury was told that plaintiff must prove by a preponderance of the evidence, 'that his disability is more than temporary in its character and in all human probability will continue for a long and indefinite period of time.'" It will be noted that the substance of that language appears as inserts (italicized) in the instructions here under review. Such

insertions tended the more exactly to define the burden devolving on the plaintiff. There was no error in that particular.

For the defendant the additional point is made that the plaintiff's instructions as a whole substituted "different phraseology from that contained in the policies themselves" and "impressed upon the jury a requirement and basis of liability which were clearly not within the meaning of the disability clause here under consideration." The "different phraseology" thus referred to by counsel is in reality a judicial interpretation of the meaning of the phrase "total and permanent disability." This interpretation has been employed in the above cited cases of *Maroney* v. *Prudential Ins. Co. of America; Rubenstein* v. *Metropolitan Life Ins. Co.; Hayes* v. *Prudential Ins. Co.,* and *Cody* v. *John Hancock Ins. Co.* Re-examination of those cases leaves us undisturbed in the conviction that the principles are correct as therein enunciated respecting the meaning of the phrase "total and permanent disability."

We perceive no prejudicial error in this record. Therefore, we affirm the judgment.

*Affirmed.*